IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| WELLS FARGO CLEARING SERVICES, LLC D/B/A WELLS FARGO ADVISORS, | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. _____ |
| v. | ) ) | |
| BRADY PEDLER and JOSEPH SANTANA, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S VERIFIED COMPLAINT**

Plaintiff Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Plaintiff," "Wells Fargo," or "WFA") files this Complaint against Defendants Brady Pedler ("Pedler") and Joseph Santana ("Santana") (collectively, "Defendants" or the "Peddler team") and states as follows:

**THE PARTIES**

1. WFA is a broker-dealer and is a limited liability company. It is a wholly-owned subsidiary of Wachovia Securities Financial Holdings, LLC, which is a wholly-owned subsidiary of EVEREN Capital Corporation, which is a wholly-owned subsidiary of WFC Holdings, LLC, which is a wholly-owned subsidiary of Wells Fargo & Company, a Delaware corporation with its principal place of business in California. Plaintiff Wells Fargo is a Financial Industry Regulatory Authority ("FINRA") member firm.

2.	Pedler was a registered representative employed by WFA from 2006 until 2020 in Sarasota, Florida, when he suddenly and without warning resigned to move to RBC, wrongly taking WFA's trade secrets and confidential information with him. Peddler is a citizen of Florida.

3.	Santana was a registered representative employed by WFA from 2006 until 2020 in Sarasota, Florida, when he suddenly and without warning resigned to move to RBC, wrongly taking WFA's trade secrets and confidential information with him. Santana is a citizen of Florida.

4.	For the entire 14 years they worked at WFA, Pedler and Santana worked as a team. The Pedler team shared work, shared clients, and shared commissions. When one benefits, the other does, too.

## JURISDICTION AND VENUE

5.	Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.  There is complete diversity between the plaintiff and all defendants; WFA is a citizen of Delaware and California, and Pedler and Santana are citizens of Florida.  The amount in controversy exceeds $75,000.00.

6.	Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because the defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

# FACTS

### A.     Overview

7. WFA employed the Pedler team for fourteen years, providing ample compensation, support, resources, and more. WFA made a substantial investment in Pedler and Santana, supporting their practice and advancing them funds.

8. After extensive and orchestrated planning, the Pedler team left WFA on August 24, 2020, moving to one of its direct competitors: RBC Capital Markets, LLC d/b/a RBC Wealth Management ("RBC").

9. Pedler and Santana violated their contractual agreements with WFA, and Florida law, before and after they left WFA. Among other violations, they solicited WFA clients to move to RBC *while still employed by WFA.* They have also, upon information and belief, taken and removed WFA's confidential client information by transferring client information to their homes, which they were not entitled to take or have in their possession.

10. Pedler and Santana have also misappropriated and misused WFA's trade secrets and other confidential and/or proprietary information by unlawfully soliciting its customers to move to RBC.

11. The Pedler team's actions have already damaged WFA, and those damages will continue to worsen unless enjoined by this Court.

12. At the time they resigned from WFA, Pedler's assets under management at WFA were $246,529,960, and Santana's assets under management at WFA were $59,429,948.

13. This action, consistent with FINRA Rule 13804, is brought solely for the purpose of obtaining a temporary injunctive relief. Once the Court rules on Plaintiff's contemporaneously-filed Motion for TRO, this matter will proceed to FINRA arbitration as required by FINRA rules governing all of the parties.

### B. **WFA hired Pedler and Santana, who agreed to protection of its confidential information and restrictive covenants.**

14. On or about May, 2006, WFA hired Pedler and Santana to become financial advisors for WFA.

15. WFA gave Pedler and Santana hundreds of thousands in upfront money, and provided further generous compensation and support.

16. In 2017, Pedler and Santana entered into a Financial Advisor Succession Agreement (the "Succession Agreement") in which they, as "Receiving FAs," agreed to pay (by monthly compensation adjustments) Retired FA Allen Steinfeld through March 2023.

17. As a part of the Succession Agreement, Pedler and Santana agreed to a further non-solicitation agreement:

> …**each Receiving FA agrees that if** this Agreement is terminated as provided herein, or if **his/her employment with Wells Fargo Advisors terminates for any reason**, in either case, **prior to the end of the Post-Retirement Period, he/she will not for a period of one (1) year following such termination, directly or indirectly, on his/her behalf or on behalf of any other person, firm, partnership, association, trust, corporation or business organization, entity or enterprise, solicit any clients associated with the Financial Advisor Succession Accounts** for the purpose of providing financial services identical to or reasonably substitutable for Wells Fargo Advisors' financial services. Solicitation shall include, but not be limited to, contact or communication by mail, by phone, by personal meeting or by any other means, either directly or indirectly, with any person or party for the purpose of requesting, encouraging or

inviting the transfer of an account from Wells Fargo Advisors, the opening of a new account with any other organization that does business in securities, banking, commodities and financial futures, insurance or other lines of business in which Wells Fargo Advisors or any of its affiliates is engaged, or discontinuing any relationship with Wells Fargo Advisors. **In addition, Receiving FA(s) shall not remove, use, disclose or transmit any confidential information or documents related to the Financial Advisor Succession Accounts or the clients associated with the Financial Advisor Succession Accounts**, including, but not limited to the names, addresses, phone numbers, account holdings or financial information related to the Financial Advisor Succession Accounts. Receiving FA acknowledges that Wells Fargo Advisors will contact a representative sample of Financial Advisor Succession Account clients at least annually during the one-year period following any such termination of employment to confirm that the Retiring FA has not provided any clients with investment advice or solicited trades in securities in any way.

(*See* Succession Agreement (Ex. 1), ¶ 16 (emphasis added).)

18. Pedler and Santana also agreed in the Succession Agreement that they would be liable for WFA's attorneys' fees and costs incurred enforcing the Succession Agreement. (*Id.* at ¶ 17.)

19. In 2014, Pedler[1] and Santana each entered into a Wells Fargo Advisors PCG Team Agreement, agreeing that they would not, with some exceptions, solicit WFA clients associated with the team arrangement:

> 8. <u>Non-Solicitation of Clients</u>. In consideration of entering into this Agreement and participating in the Team Program, the adequacy and sufficiency of which are hereby acknowledged, each Financial Advisor Team Member agrees that if this Agreement is terminated as provided herein or if his/her employment with Wells Fargo Advisors ends for any reason, he/she will not for a period of one (1) year following such termination, except as expressly allowed under the terms of the Team Program document, directly or indirectly, on his/her behalf or on behalf of any other person, firm, partnership, association, trust, corporation or

---

[1] Pedler also has a non-solicitation agreement in his promissory note to WFA. (*See* Note, a true and correct copy of which is attached as Ex. 2.) Under the terms of the note, Pedler is prohibited from soliciting any WFA clients he serviced or learned of through WFA. (*Id.*)

> business organization, entity or enterprise, solicit any clients associated with the Team arrangement for the purpose of providing financial services identical to or reasonably substitutable for Wells Fargo Advisors' financial services. Solicitation shall include, but not be limited to, contact or communication by mail, by phone, by personal meeting or by any other means, either directly or indirectly, with any person or party for the purpose of requesting, encouraging or inviting the transfer of an account from Wells Fargo Advisors, the opening of a new account with any other organization that does business in securities, banking, commodities and financial futures, insurance or other lines of business in which Wells Fargo Advisors or any of its affiliates is engaged, or discontinuing any relationship with Wells Fargo Advisors. Notwithstanding these provisions, a Financial Advisor Team Member who leaves the Firm will be allowed to solicit the clients the Financial Advisor brought or introduced to the Team.

(*See* 2014 PCG Team Agreement (Ex. 3), ¶ 8.)

20. In 2018, Pedler and Santana entered into an updated Wells Fargo Advisors PCG Team Agreement, again agreeing to a limited non-solicitation agreement:

> 7. <u>Non-Solicitation of Clients</u>. In consideration of entering into this Agreement and participating in the Team Program, the adequacy and sufficiency of which are hereby acknowledged, each Financial Advisor Team Member agrees that if this Agreement is terminated as provided herein or if his/her employment with Wells Fargo Advisors ends for any reason, he/she will not for a period of one (1) year following such termination, except as expressly allowed under the terms of the Team Program document, directly or indirectly, on his/her behalf or on behalf of any other person, firm, partnership, association, trust, corporation or business organization, entity or enterprise, solicit any clients associated with the Team arrangement for the purpose of providing financial services identical to or reasonably substitutable for Wells Fargo Advisors' financial services. Solicitation shall include, but not be limited to, contact or communication by mail, by phone, by personal meeting or by any other means, either directly or indirectly, with any person or party for the purpose of requesting, encouraging or inviting the transfer of an account from Wells Fargo Advisors, the opening of a new account with any other organization that does business in securities, banking, commodities and financial futures, insurance or other lines of business in which Wells Fargo Advisors or any of its affiliates is engaged, or discontinuing any relationship with Wells Fargo Advisors. Notwithstanding these provisions, a Financial Advisor Team Member who leaves the Firm will be allowed to solicit the clients the Financial Advisor brought or introduced to the Team.

6

(*See* 2018 PCG Team Agreement (Ex. 4), ¶ 7.)

21.     During the time that Pedler and Santana worked for WFA, WFA supported the Pedler team in every way possible. WFA honored its contracts with Pedler and Santana, providing generous compensation, office facilities, support services, computer software, clearing services, research, promotional materials, registration for various exchanges, resources supporting Pedler's and Santana's business, and other benefits and support. WFA made, over many years and throughout the time it employed Pedler and Santana, a substantial investment.

22.     The Pedler team also benefitted from WFA's support, research, goodwill, and other back office support.

### C.     **Pedler and Santana leave WFA and violate the Succession Agreement and Team Agreements.**

23.     Despite WFA's investment, and the benefits enjoyed by Pedler and Santana, the Pedler team resigned from WFA and moved to RBC on August 24, 2020.

24.     Pedler and Santana, upon information and belief, stole WFA's trade secrets and other confidential information of WFA during the time employed by WFA, planning to take the confidential information for use at RBC.

25.     Indeed, the Pedler team began soliciting clients to move to RBC before they even moved.

26.     For example, a WFA client with the initials J.W. called WFA and requested that his account be moved from the Sarasota branch to the Clearwater branch. During the call, and while Pedler and Santana were still employed at WFA, the client told WFA that the Pedler team was planning to move to a different broker dealer.

27. The client shared with WFA that Pedler asked the client to transfer his account to RBC. Pedler, on behalf of the team, also, *while employed by Wells Fargo*, touted the many ways Pedler believed was better than Wells Fargo.

28. In addition, in the months before his exit, Pedler and his registered client associate Yolanda R. South ("South") created an abnormally large number of labels (containing client information) that were sent to Pedler's personal email address. (*See* Client Labels (Ex. 5).)

29. Further, on behalf of the team, Pedler – *while still employed by Wells Fargo* – exchanged emails with a WFA client about moving accounts to RBC.

30. Remarkably, while still being paid by WFA on July 23, 2020, Pedler forwarded materials about the strength of RBC to a WFA client. (*See* July 23 email and attachments "RBC Strength You Can Trust" and "RBC S&P Strength" (Exs. 6-7).)

31. The client responded "Thanks Brady. Formulating a list of questions." (*Id.*).

32. Then, apparently realizing he had failed to cover his tracks, Pedler attempted to hide what he had done, responding "Anytime. If you decide you want to move those accounts from RBC to Wells, I can help you with the transfer process." (*See* July 24, 2010 email (Ex. 8).)

33. There is a substantial threat that WFA will suffer irreparable injury if a temporary restraining order is not entered. Peddler and Santana have and will continue to use WFA's trade secrets and other confidential information to solicit WFA customers.

34. WFA lacks an adequate remedy at law. Money damages are inadequate to compensate WFA for the loss of its trade secrets and the damage to its relationships with its clients. Indeed, the Pedler team agreed to injunctive relief:

> Retiring FA and Receiving FA(s) each consent to the issuance of a temporary restraining order or preliminary injunction to maintain the status quo pending the outcome of any proceeding. This injunctive or other equitable remedy shall be in addition to any other remedy at law or equity that Wells Fargo Advisors may otherwise have and shall not limit or constitute a waiver by Wells Fargo Advisors of, any available remedy.

(Ex. 1, ¶ 17.)

35. The threatened injury to WFA outweighs the threat and harm to Defendants. Defendants have no right to use WFA's confidential information, nor to solicit clients in violation of their agreement.

36. There is a substantial likelihood that WFA will prevail on the merits. The evidence already uncovered reveals that Peddler and Santana have violated their non-solicitation agreement and breached their fiduciary duties to WFA.

37. Granting an injunction will not disserve the public interest. In fact, the public has an interest in the parties complying with their contractual obligations.

## II. CLAIMS

### COUNT I – BREACH OF CONTRACT

38. Pedler and Santana had valid contracts with WFA, which they breached through their actions described herein.

39. Pedler's and Santana's breaches resulted in damages to WFA.

## COUNT II – BREACH OF FIDUCIARY DUTY

40. Under Florida law, Pedler and Santana had fiduciary duties of loyalty, good faith, and fair dealing to WFA, including without limitation the duty not to solicit WFA's customers to move to RBC while still employed by WFA and during one year afterward. An "employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment." *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. Dist. Ct. App. 1981).

41. Through their actions described herein, Pedler and Santana violated their fiduciary duties to WFA, resulting in damage to WFA.

## COUNT III – VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT

42. The Florida Uniform Trade Secrets Act, codified at Fla. Stat. § 688.001, *et seq.*, prohibits one from misappropriating "trade secrets," which it defines as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4); *see also Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 529 (Fla. Dist. Ct. App. 2017) ("Customer information has been held to be a trade secret. *See, e.g., Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 808 (Fla. 3d DCA 2014) ("Examples of trade secrets include confidential business information such as a customer

44046130 v2

list, when the list is not just a compilation of information readily available to the public, but rather acquired or compiled through the owner's industry."); *Delucca v. GGL Indus., Inc.*, 712 So. 2d 1186, 1187 (Fla. 4th DCA 1998) ("[W]e find competent substantial evidence that some of the information given out by appellant, which included information about customers which was not available from other sources, constitutes trade secrets under Chapter 688.").").

43. Client information, including without limitation customer lists, is misappropriated if it is (1) acquired by improper means, and/or (2) disclosed or used by a person who (a) used improper means to acquire it, (b) knew or had reason to know that the information was derived improperly and/or was required to be kept secret, and/or (c) knew or had reason to know that the information was a trade secret and that the information was acquired by accident or mistake. *See* Fla. Stat. § 688.002(2).

44. Through their actions described herein, Defendants have improperly acquired, disclosed, and used WFA's trade secrets, causing damage to WFA.

## RELIEF REQUESTED

WFA requests the Court to grant WFA the following relief:

(1) a temporary restraining order enforcing the Succession Agreement and PCG Team Agreements and prohibiting the Defendants and anyone working in concert with them from soliciting, directly or indirectly, on his/her behalf or on behalf of any other person, firm, partnership, association, trust, corporation or business organization, entity or enterprise, any clients associated with the Financial Advisor Succession Accounts and/or any clients whom Pedler and Santana did not bring to their PCG Team;

(2)　a temporary restraining order requiring the Defendants to immediately return to WFA all WFA client information taken by the Defendants; and

(3)　all other relief that the Court deems necessary to protect Plaintiff's rights.

44046130 v2

## VERIFICATION OF PAUL COSTELLO

(1)    I am employed by Plaintiff Wells Fargo Clearing Services, LLC as Tampa Market Manager, Senior Vice President.

(2)    I have read the foregoing Complaint and am authorized by Plaintiff to verify the contents of the Complaint. It is a part of my official duties for Plaintiff to have knowledge of the facts set forth in the Complaint, and I do have knowledge of such facts, either personally or from my review of Plaintiff's business records relating to the subject loan, of which I am one of several custodians.

(3)    The facts set forth in the foregoing Complaint are true and correct.

_____
Paul Costello

14

## VERIFICATION OF BRIAN KILCZEWSKI

(1)   I am employed by Plaintiff Wells Fargo Clearing Services, LLC as Financial Advisor Senior Vice President - Branch Manager for our Clearwater, Florida branch.

(2)   I have read paragraph 26 of the foregoing Complaint. The facts set forth in those paragraphs are true and correct.

*/s/ Brian Kilczewski*
Brian Kilczewski

44046130 v2

Respectfully submitted on August 28, 2020.

*//s/ Robert V. Williams*
Robert V. Williams, Trial Counsel
Florida Bar No. 0144720
Dana L. Robbins
Florida Bar No. 106626
BURR & FORMAN LLP
One Tampa City Center
Suite 3200
201 North Franklin Street
Tampa, FL 33602
T (813) 221-2626
F (813) 221-7335
rwilliams@burr.com
drobbins@burr.com
pturner@burr.com

*Attorney for Claimant*
Wells Fargo Clearing Services, LLC
d/b/a Wells Fargo Advisors

**DEFENDANTS TO BE SERVED**

Brady Pedler
9951 Cherry Hills Avenue Cir
Bradenton, FL 34202-4003

Joseph Santana
4732 Capri Ave
Sarasota, FL 34235-4316

44046130 v2